## SAMUEL M. DODD

*v.*

## LEONIDAS DOTY.

*Filed at Mt. Vernon February 3, 1881—Rehearing denied May Term, 1881.*

1. RECORDING LAW—*marring of index of record will not affect title as to an innocent purchaser.* Where a former owner of land has conveyed the same by warranty deed, which is duly recorded, the fact that the index in the recorder's office has been marred, so that a party taking a deed of trust from him failed to discover such prior conveyance, will in no way impair the title of those holding under such prior deed, who had nothing to do with the making or marring of the index.

2. ASSIGNMENT IN BLANK—*presumption as to date.* Presumptively, where commercial paper is indorsed in blank, the same was assigned on the day it was made. But *quære*, whether this rule is applicable to an assignment in blank of a bond for a deed.

3. EVIDENCE—*burden of proof.* Where a party takes a deed of trust from one to whom a bond for a deed was given, and it afterwards appears the bond was assigned by the obligee without date, under which a second assignee procures a deed without notice of any secret equity in the first assignee at the time of giving the trust deed, the burden of proof in a suit by a purchaser under the trust deed against the grantee under the assignment will be upon the purchaser under the deed of trust, to show that at the time it was given the maker of the same had an equitable title in the land, and that the person acquiring the legal title under the assignment of the bond had notice of such equitable title when he bought the bond. In such a case the mere proof of a secret equity in one party, of which the other had no notice, can not prevail against the legal title, honestly obtained.

WRIT OF ERROR to the Circuit Court of Jackson county; the Hon. MONROE C. CRAWFORD, Judge, presiding.

On the 8th of November, 1866, Stephen S. Hall, being in possession of the property in controversy,—the south-east quarter, and the south half of the north-east quarter of section 16, in township 8 south, range 1 west, in the county of Jackson,—conveyed the same to Wm. H. Davis, who, on April 13, 1867, conveyed to D. A. Given, and Given conveyed, on January 23, 1868, to W. O. Britt, of Kentucky or

Tennessee. Each of these deeds was duly filed for record soon after its execution, and the last named deed was so filed January 31, 1868.

On the 26th of May, 1869, Britt gave to Hall a title bond for the land in controversy, by which he agreed to convey it to Hall, or his assigns, upon payment to him of certain notes given him by Hall, for $6000, and interest. This instrument was not recorded. This bond was assigned by Hall in blank, and in February, 1875, as hereafter stated, was found by Dodd in the possession of one Gibson, by whom it was then assigned to Dodd, and Britt conveyed to Dodd. But of this hereafter.

On November 28, 1871, Hall, being still in possession of this land, with other adjoining lands, conveyed the whole of his farm, embracing the land in controversy, to Henry C. Wilson, by a trust deed, to secure to Doty the payment of certain notes executed at the same time by Hall to Doty, amounting to $15,000 principal, and payable from time to time, with annual interest, further evidenced by interest coupons. This deed gave Wilson power of sale in default of any of the payments to be made by Hall.

On the 31st day of August, 1874, default having occurred in payments to be made by Hall, the lands named in the trust deed, embracing the land in controversy, were sold under the power in the trust deed, and Doty became the purchaser at the price of $7000, and a trustee's deed was made by Wilson, conveying the same to Doty.

According to the testimony of Mr. Young, (an agent for a firm in St. Louis, of which Dodd, the plaintiff in error, was a partner,) he, as such agent, about the last of February, 1875, called on Hall, seeking payment or security for an indebtedness of Hall to that firm, amounting at that time to about the sum of $7000, and consisting of several promissory notes of Hall. Hall told Young that a man named Gibson held a title bond to 240 acres of land near by, *on which Gibson was then living;* that it was worth $50 per acre; that there was a

deal between him and Gibson, by which he thought if Young would put in some cash, he (Young) could trade Hall's notes to Gibson for the bond, and if so, he could get a good title to the land from W. O. Britt. Young asked Hall whether Doty did not have a deed of trust upon this land, having so heard. Hall assured him that Doty had no claim upon the land whatever, and said he (Hall) had bought this land of Britt; that he was to make certain payments, which had been made, with the exception of $2500, and that Gibson had the bond then, and *held it at the time of his transaction with Doty,* and that Doty could not have any lien upon the land. After this they went together (after having examined the records) to the house on the land where Gibson was living, and looked at the land. Young asked Gibson if he had a title bond to this 240 acres of land, and Gibson said he had, and went to his desk, in Young's presence, unlocked it, and produced the title bond of Britt, above mentioned. On the back of the bond was an assignment of the bond, signed by Hall, and directing Britt to make the deed to the assignee, but the name of the assignee was not inserted, a blank space being left in the writing for the insertion of the same. Negotiations then ensued between Young and Gibson, which resulted in an agreement that Young should pay to Gibson, in cash, $1000, and to deliver to him the notes of Hall, and that Gibson should assign to him the title bond for this land. This was done. Gibson wrote his name on the back of the bond, indorsing it in blank, and Young drew upon his principals in St. Louis for the $1000, by two drafts, for $500 each, payable to the order of Gibson, one dated February 18, 1875, and the other March 5, 1875. Young, after giving Gibson the first draft, visited Britt at his residence, in Kentucky, and found the unpaid part of the purchase money mentioned in the bond, with interest, amounted to $2690, which he paid by a draft on his principals, and procured Britt to execute to Dodd a warranty deed, conveying these 240 acres of land in fee to him, and this deed was placed on record, and Young,

on getting Britt's deed, returned to Illinois and gave Gibson the second draft, and in behalf of Dodd leased this land for one year to tenants, who went into possession about the 10th day of March, 1875.

The title bond from Britt to Hall (which was assigned in blank by Hall, and also assigned in blank by Gibson, and under which bond and assignments Britt conveyed to Dodd,) bears date in May, 1869, and was acknowledged by Britt in June, 1869. The assignments upon the bond are without date.

Gibson swears he never had any interest in the title bond or the land therein mentioned. He says the negotiation for the purchase took place entirely between Hall and Young; that Hall, at that time, had possession of the bond; that it never was assigned to him (Gibson), and that he never placed his name on the back of the bond, or authorized his name to be placed there, and that he received no part of the $1000 paid by Young.

This is a suit brought by Doty against Dodd, asking that Dodd be required to convey to him the lands conveyed to Dodd by Britt.

The circuit court found that the assignment of the title bond to Dodd, and upon which he received a deed from Britt, was a fraud upon complainant, and decreed that Dodd convey the premises to Doty, and by the decree declared Doty to be the owner of the premises, and ordered that he should account for the rents and profits from March 10, 1875, to March 10, 1878, and be charged therefor $1800. The decree further orders complainant to pay to Dodd the sum of $1000, without interest, the amount paid for the title bond, and the sum of $2690, without interest, the amount paid to Britt for his deed, and that from the sum of these amounts ($3690) the aforesaid sum of $1800 be deducted, and that complainant pay the balance to Dodd,—that is, $1890. The cause comes here upon writ of error, sued out by Dodd.

Mr. THOMAS G. ALLEN, for the plaintiff in error:

There being no proof sustaining the allegations of fraud in the bill, the decree will be reversed. *Davis* v. *Pickett*, 72 Ill. 484; *Morris* v. *Tilson et al.* 81 id. 607; *Stacy* v. *Randall*, 17 id. 470; *De Wolf et al.* v. *Long*, 2 Gilm. 679.

Hall having previously sold and conveyed the lands to William H. Davis, by a deed purporting to convey an estate in fee simple absolute, the after-acquired title inured to Davis, and for a like reason it inured from Davis to Given, from Given to Britt, and from Britt to Dodd. Rev. Stat. 1874, p. 272, sec. 7; *King* v. *Gibson, Admr.* 32 Ill. 352; *Gochenour* v. *Mowry*, 33 id. 331; *Bybee* v. *Hageman*, 66 id. 519; *Welch* v. *Dutton et al.* 79 id. 469; *Van Rensler* v. *Kennedy*, 11 How. 629.

Mr. CHIEF JUSTICE DICKEY delivered the opinion of the Court:

The bill in this case charges, in many ways, fraud, but no evidence in the record tends to sustain such charges as against plaintiff in error. Unless the supposed fraud mentioned in the decree be proven and brought home to plaintiff in error, his rights ought not to be affected thereby. It is not perceived that the fact of Hall having owned the land in controversy at a former date is of any significance in the case, for that title passed from him by warranty deed, duly recorded, as early as 1866. The fact that the index in the recorder's office was marred so that Doty failed to discover the record of this deed before taking the deed of trust to Wilson, can in no way impair the title of those holding under that deed, inasmuch as none of them are shown to have had anything to do with the making or marring of the index.

If Doty took any interest in the lands in controversy by reason of the trust deed to Wilson, such taking can only rest upon the hypothesis that at that time (November, 1871,) Hall had an equitable interest in these lands under the title bond

made to him by Britt, in May, 1869, and which, by operation of that deed in such case, as between the parties, passed to Hall.

The production of this bond shows, on the back, an assignment by Hall, which is not dated at all. In the absence of proof to the contrary, it is taken, in the indorsement in blank of commercial paper, that in making the indorsement the assignor adopted the date of the instrument assigned,—that is, *prima facie*, the same was assigned on the day it was made.

Whether this rule be applicable on principle to the assignment of a bond of this kind or not, the burden of proof rests on the complainant to show that Hall had an interest in this land at or after the time of the making of the trust deed to Wilson, under which he claims. This is not shown by the proofs in the case. In fact, there is no proof in the case that Hall ever paid a dollar towards the purchase of this land from Britt, and no proof that he held any interest on or after the trust deed to Wilson. If Hall had at one time an interest under this bond, still, if such interest of Hall had passed from him long before the making of the trust deed, and at that time he was neither the owner nor the apparent owner of the property, complainant can have no relief. Young, the agent of Doty, was assured by Hall that this was so at the time he bought the bond from Gibson, and there is no proof tending to contradict this hypothesis, except the testimony of Gibson. His prevarication as to the part taken by him in the sale of this bond, casts distrust upon his testimony, and the testimony of Young is clear, specific and consistent, and supported by the production of concurrent papers. It must be taken to be of at least as much weight as the testimony of Gibson.

The burden of showing an interest in Hall at that date rested upon the complainant, and also of showing that defendant had notice of this equity at the time he bought the bond through Young. We think, the proofs all being con-

sidered, the weight of the evidence does not sustain the claim of complainant in this regard.

This seems to be a controversy between two innocent purchasers. In such case the mere proof of a secret equity in one party, of which the other had no notice, can not prevail against the legal title, honestly obtained.

The decree is, therefore, reversed, and the bill dismissed.

*Decree reversed.*

SHELDON, J., dissents.